Mic check, one, two. Mic check, two, three, four. Before turning to the five cases on today's list, the court, and particularly this panel, wishes to acknowledge the birthday of our esteemed colleague, Judge Daniel M. Friedman, seated to my right, who today becomes 90. Happy birthday, Judge Friedman. We won't sing, but we all will aspire to match his record. The cases are five. Two are being submitted today on the brief, namely Appeal No. 05-3216, Menares v. Office of Personnel Management, and Appeal No. 05-3331, Solar v. Department of Treasury. On the three-case argument list, we'll hear argument first in Appeal No. 05-1221, BreckenRidge Pharma v. Metabolite. Mr. Pershy, good morning. Welcome. Good morning, Your Honor. Please proceed. Good morning to the court. Your Honor, I reserve five minutes for rebuttal. Very well. When the yellow light goes on, you're beginning to consume those five. Thank you, Your Honor. Robert Pershy is for BreckenRidge Pharmaceutical. And with me is my colleague Denise from Buckingham, Duluth, and Burroughs, also on the brief. And Mr. Gene Kim, General Counsel for BreckenRidge. The issue that we have before us today is whether the district court erred in dismissing our case for lack of personal jurisdiction. And the reason it committed that error was because it misconstrued, we believe, the letters that were sent out, which it termed as a cease-and-desist letter, and said, therefore, using federal patent law, it's exempt. Well, I understand the heart of your case to be that the letters in this case, rather than being categorized as typical of what can fairly be called cease-and-desist letters, actually are more in the nature of promotional letters or offers of sale, as was the case in 3D services. Exactly, Your Honor. So you say, this is like 3D services, therefore, under that case, we have to win. Yes, Your Honor, because just put it in the patent. Well, let's compare the facts of 3D services, then, with the facts here. What did the letter here say? The letter here said, we want you to know that we're out there with a product, what the product is used for, that it's protected by a patent, but didn't disclose that, in fact, the patent only covers a method of treatment for a specific disease. Well, so far, it sounds like a cease-and-desist letter. What is it that's in the letter that you point to that makes it not a cease-and-desist letter? It was the purpose of it was sent out for obtaining… Well, the purpose would be the state of the mind of the sender. I'm asking what the letter says that you would rely on to show that the letter cannot be properly called a cease-and-desist letter. It does not say you're a potential infringer. It does not say that the conduct you are conducting is infringing. Well, maybe it was badly written. Maybe it could have said more or said it more strongly, but that doesn't seem to be the point. It seems like the distinction is between an offer of sale, as was the case in 3D systems, versus a threat phrased somehow that you might be sued because we have a patent. Well, the tenor of the letter is exactly that of an offer for sale, with sales literature saying why you should use it. Does the letter quote prices or quantities or delivery dates or anything like that? It attaches the literature of Pam Webb, who is the actual supplier of the product. I think you should answer the question that's asked. Does the letter or what accompanied it have price quotes or quantities or delivery dates? No, it's not an invoice, Your Honor. It doesn't give detail of that nature, but it gives who to get the product from. It tells where the source is. It gives the promotional literature for Pam Webb. It's admitted by the author. Could the recipient of the letter consummate a contract by replying to the letter and saying, yes, I accept the offer? No, Your Honor. It's not a specific offer. Isn't that the distinction in 3D, that if the communications constitute an offer that could be accepted and thereby create a binding contract, then it's in the category of promotional sales documents, not cease and desist letter? Isn't that the key distinction in the case law? I don't believe that, Your Honor, because you can have solicitation without having an offer for purchase being included in the letter. I'm asking about the 3D services case. It seems to me if you can't get around, if you can't show that you're under that case, you can't win. So I'm trying to have you compare your case to 3D. Well, Your Honor, I believe we can win because even if you determined that it was a cease and desist, but it was in bad faith, we would be at least entitled to the evidentiary portion of seeing whether or not on the Globetrotter, we are entitled to see whether or not this letter should be construed as a bad faith letter, and in essence, a casting of a net that's too far to include, not people who are not infringing. When you say a bad faith letter, do you mean that the sender of the letter, the company, had no real belief that there was an infringement? Absolutely, Your Honor. They didn't because they sent it to Publix, a supermarket, which cannot possibly, in any shape or form of imagination, be treating hyper-homesthemia condition. That would not occur. So they knew when they sent it, they were sending it to people who could not infringe that patent, who were maybe using a product, which they also knew, because only three weeks before we were in the District of Colorado Court, where the issue came up that, can there be a non-infringing product? And the answer is yes, with the same exact formulation. Why? Because to get their patent protection in November of 1993, a long history here, they carved out any treatment for vitamin deficiency using exactly that type of formula. But if your position is that this is not a cease and desist letter, this is a promotional letter, then why is this discussion about bad faith relevant? Whichever way it's construed, whether you construe it as a cease and desist, put given out in bad faith, or a promotional letter that is tortious and causes a tort, either way it's actionable, because the exception, the exception that's carved out—and there is an exception that's carved out. Let me assume that you give an exception for good faith, and that's important. Good faith notice to potential infringers. Well, is there a finding here of bad faith? Your Honor, it's never disputed, because it's on a motion to dismiss, and we would believe that that's where the court erred in its saying we're not entitled to having a blend of bad faith. I would be very helpful to the court if you would answer the questions responsibly. Was there a finding by the district judge of bad faith? No, there was not, Your Honor. So when you talk about bad faith, you're just talking about your personal opinion. No, that was as pleaded in the pleadings. We pled it, it's not been disputed factually, in no affidavit, in no response, and therefore, as a pleading issue, that issue is raised, and we should have been entitled to go forward. What the court did was having— Well, what evidence of bad faith was submitted? Your Honor, what was submitted was the pleading and the facts and circumstances of how that letter arrived. I'm asking whether the allegation in the complaint was supported by any evidentiary materials, like affidavits. Not at that level, Your Honor, because this was on a motion to dismiss, and not as a summary judgment. Well, that doesn't mean we can't dismiss materials. Yes, Your Honor. But it was never disputed. The bad faith allegation was never disputed. Well, are you suggesting that opposing counsel has conceded that his client was acting in bad faith when transmitting the letter? That hardly seems to be the case. If that was his position, he wouldn't be defending the district court. He would be agreeing with you that the case has to go back. I understand, Your Honor, but in fact, evidentially, he did not submit anything. Well, maybe he doesn't contest it. It seems to me that can't be accurate, because if he weren't contesting it, he wouldn't be here. He argues that, yes, Your Honor, but he has not submitted anything to submit that that allegation is, in fact, factually wrong. But you submitted, as I gather in answer to Judge Michelle's question, you submitted nothing to support your claim of bad faith. I mean, is it enough just to say they're suing us for infringement, but it's in bad faith? Let's take a normal case. You're manufacturing something, and someone else sues you saying you're infringing our patent of this product. And you just put out an answer saying the suit is brought in bad faith. Is that enough to entice you to get a hearing without something more? And he comes back and submits an affidavit from the president of the company saying this is in good faith. We have every reason to believe that these people are infringing our patent. Here's what our patent does so-and-so, and this is their product. In fact, Your Honor, there was no affidavit that's in good faith. It was never disputed. That allegation, even test as we stand here today, was never actually disputed in an affidavit or response. Well, it was never disputed, I take it, only in the sense that they didn't file an answer. They moved to dismiss. They moved to dismiss on the basis of an absolute exception saying that whether or not, once they give notice of the patent, it falls under an exception. And whether or not it's in bad faith or not, we are basically exempt. They actually said whether or not we're in good faith or bad faith, we're exempt? They actually said that in their plea? No, Your Honor, that's what it's been— Well, then don't say something that isn't what the document contains. The document contains the argument that regardless of whether it's a ceaselessness letter or even not a ceaselessness letter, whatever it is, that in fact it would be non-actionable or you could not get jurisdiction. And that's what we dispute. But it doesn't say anything about bad faith. It does not address per se. Your Honor, I'm into my rebuttal time. All right. Why don't you go ahead and save that, Mr. Pershy. Thank you very much. We'll hear now from Mr. Beaton.  Good morning. Please proceed. Thank you, Chief Judge Mischel. If it pleases the Court, we did not admit that the letter was in bad faith. In fact, there was a finding by the district court in effect that the letter was not in bad faith. At page 822 of the appendix, the district court stated about a third of the way down, there is no dispute that plaintiff sells a product that could constitute infringing activity. So indeed, the letters were of good faith. Not only that, the district court so found. With respect to the controlling law in this circuit, I think that the red piece is Let me ask you about the facts before we get into abstract legal proposition. I understood opposing counsel to suggest that the brochure, which I understand accompanied the letter, contained promotional type or sales type material. Do we have that accompanying brochure in the record here? I do not believe that brochure is in the account. So would it be your position then that we would not be authorized to be depending on anything that that document may contain? I don't think it would be fair to rely upon a document that's not in the record to establish, for example, that there was an offer to sell. Was it in the record below? I don't believe it was in the record below, as a matter of fact. All right. Now, the letter itself was how long? Remind me about the letter. The letter itself is on 761 of the appendix. It was a page and a quarter. Page and a quarter. Yes. And I had asked counsel whether it contained price quotes or delivery schedules or quantities available or other sales type or offer to sell type materials. And I gather that he said no. No, nothing of the sort. It did contain this brochure, but for a specific purpose. As counsel has indicated, the patents at issue are method patents for a method of treating certain medical conditions. So the drug chains would be what, contributory infringers potentially? That's correct. Contributory. But obviously they don't make the product. That's correct. The point of including the brochures was to show that the licensee of the patentee was selling the product for this specific patented purpose. So in other words, you would be saying you can't continue to buy it from your present vendor because that would implicate you, along with others, in infringement. But here's an alternative. You can get the same substance for use in this method from a more proper source. We didn't go quite that far. If you want to read into the letter an allegation of infringement, and I think that does require some reading into the letter, but assume that for a moment, then yes, I think that your characterization is fair. We would be saying that if you construe this to be infringing activity, here's an alternative. But we acknowledge that it wasn't necessarily infringing activity, and that's why we didn't make an allegation of infringement. The only suggestion we made, and I quote, is that we would urge you to consult with your patent attorney. Now conceivably, I suppose, it's not in the record, but conceivably there could be uses of this particular formulation that are not covered by this particular method patent. That's why we urged them to consult with their patent attorney to explore that issue.  I don't believe that these particular recipients in Florida responded. There were three? There were three in Florida. Three recipients. So one letter to each of three recipients in the state of Florida, no response. That's correct. Mr. Beaton, the letters certainly identified the patent and described what the patent covered and identified the licensed product, not only describing the product, but also attaching these promotional materials or descriptive materials, shall we say? Yes, that's right. And can't these letters be read as a form of solicitation of some sort? Isn't that what the district court so found? The district court did conclude that these were a form of solicitation of some sort. And it goes to the question of whether this meets the Florida long-arm statute. That's right. Now, having said that the district court concluded it was a solicitation of some sort, that doesn't get the plaintiff home free here because, of course, for there to be personal jurisdiction, the situation has to not offend notions of fair play. The district court went on to conclude that under Red Wing, it would offend notions of fair play because, at the core, the letters were, at most, a cease and desist letter. And I think better characterized as a letter suggesting that people consult with patent attorneys. But isn't this case more like ACRO and genetic implant than Red Wing or Hildebrandt? No, I think in ACRO, and I think that Judge Michelle wrote the ACRO opinion, if I recall, the licensee in that case was actually a resident of the forum. And so there were very strong contacts between the declaratory judgment defendant, i.e., the patentee, and the forum by virtue of this core license agreement with the resident of the forum. What's the distinction with regards to the other three cases, Judge Lynn? And genetic implant, the licensee was not a resident, correct? I don't have genetic implant in front of me, but I think the key to this case is that there's simply no contacts with the forum, whatever, aside from these particular three letters. Well, they're not alleging any other contacts. They're saying the letters on their face are enough. So we're trying to figure out can that be right or not, and it depends on how these letters compare with counterpart letters in other cases. So it seems to me Judge Lynn's challenge to you to draw the distinction between your facts and each of those precedents is quite apt and important. Well, I think that the key case is going to be the Red Wing case, which very specifically holds that there can't be personal jurisdiction founded solely on the sending of cease and desist letters. These fall short of cease and desist letters, but even cease and desist letters, and even coupled with a solicitation in the form of an offer to license. Here there's not even an offer to license. Isn't this really basically what the court said in Red Wing, that a patentee has the right to inform people about its patent and that it believes there may be infringement? And that's all you're doing. As I read this letter, all you're doing is you're saying to these people, look, there may be a problem with these generic drugs, and before you substitute a generic prescription for a prescription for the patented product, check with your lawyer. As I understand it, as far as solicitation is concerned, this is solicitation only in the sense that if they stopped selling the generic product, presumably they would then start selling more of your product. Exactly right, except for the very last part, which is they couldn't sell more of our products, as you put it, because they were actually our licensee's products. That was your exclusive licensee. Exclusive with respect to this formulation, right. Doesn't that make a difference? That does make a difference, but still, the point that I wanted to make is that there's no offer to sell here, because Metabolite, this patentee, was not in the business of selling anything at all. Right, but there's a suggestion that the exclusive licensee of your client, the patentee, should now become the source of the product that these drug chain stores would sell. So functionally, why isn't that the same as the circumstance where a patentee who also manufactures would threaten to sue and offer to license? Well, as it was stated in the Red Wing case, doing business with someone who does business in Minnesota, which was the forum there, isn't the same as doing business in Minnesota. I'm asking you why your letter, given the fact that you hold the patent but don't manufacture the product, isn't the equivalent of a letter of someone who holds a patent who does manufacture the product, where that person says, cease and desist, because I think you're infringing, and, by the way, buy a license from us so you can buy the product without question of infringement. I think the question revolves around whether there's actually doing business by a patentee in the forum. Economically, functionally, at the end of the day, I suppose you can say it winds up the same. But as a legal matter, that doesn't constitute doing business in the forum. Doing business with somebody who does business in the forum isn't doing business in the forum. But Metabolite came to the forum, sent letters to consumers in the forum, and those letters can be read as a form of solicitation, some containing promotional material, descriptions of the product in question. And in terms of the activity of the licensee, your licensee was an exclusive licensee, and I think the genetic implant case makes clear that it really doesn't make a difference whether the licensee is in the state or not. Well, I would suggest that if there were to be personal jurisdiction under these circumstances, then a patentee would be left without the ability to tell others about his patent. I don't know what less these letters could have said and still communicated to the recipient. It's not what's less. It's that these letters are more in the sense that they contain promotional material. Here you have a party coming into the state, sending letters not to a competitor, but sending letters to a consumer, an ultimate consumer, which can be read, and in fact were read by the district court as a form of solicitation of business. It's more than a cease and desist letter. Well, I think it's more and less than a cease and desist letter. There's no demand that they cease infringement because there's no allegation of infringement. But I'll grant you that the district court found that they constituted a solicitation in a sense. Well, to me that makes it less like Red Wing and more like some of these other cases. Well, but in Red Wing there was an offer to license for Carl, and that was considered a form of solicitation. Yeah, but of course you couldn't include an offer to license because you already have an exclusive licensee, so it's not an option for you to offer to license. The equivalent is to tell them to buy from the person to whom you have exclusively licensed. I agree. I think that is essentially the equivalent. Well, why is it— And for the same reason it should be protected. Where is the line drawn then? If somebody issues a classic cease and desist letter and includes promotional materials, perhaps including details like prices, quantities available, and delivery timeframes and so forth, then where is the line? Is it your position that only if it's an acceptable offer under contract law do the promotional materials tip the scale and provide for personal jurisdiction? I think in order to constitute doing business, business has to be transacted, or at least there has to be an offer to transact business with the letter author. So any promotional materials included in a cease and desist letter that fall short of an actual offer to sell, you would say would not tilt in favor of personal jurisdiction. I think at some point you can start to split hairs on this, but we're far on the other side of the line because we weren't even a person in position to make a sale. I mean, we were directing them or suggesting that they look at this other licensee, but that is far, far short of making an offer to sell. Suppose that I'm in your position, and I send a cease and desist letter in the classic language, and I include my licensee's promotional material describing the product, and I include an order form that the recipient of the letter can sign to order 10,000 doses. Well, now I think you're talking about an agency arrangement. If the author of the letter is taking orders on behalf of someone who's prepared to fill those orders— —to fill out the order form of my licensee and buy the licensee's product, then of course I get loyalty. I think that would be an agency arrangement, and under ordinary state law agency, there would be personal jurisdiction there. But this is quite different. Mr. Beaton, you mentioned a moment ago that Tavalli was not actually doing business in Florida. So I gather this is an attempt to sort of distance yourself from your licensee that clearly was doing business in Florida. The licensee clearly was doing business in Florida. But yet you have— Tavalli clearly was not. But in the license agreement—first, the license agreement, as I understand it, was an exclusive license agreement, at least with respect to this product. With respect to this product, yes. And had some obligations on the patentee's part to cooperate with the licensee and to enforce the patent. Well, the license agreement, Judge Lynn, was very specific in that regard. On page 321 of the appendix, in section 6.01, there was an obligation. If either party becomes aware of any actual or suspected infringement of any of the license patents by any third party, it shall promptly notify the other party. But then on 6.02, it goes on to say—I see I'm out of time, so I won't read it back to you. Finish your answer. Well, on 6.02, it specifically withholds from the licensee a right to enforce the patent except with the consent of the patentee. There's one other related point that I should mention, and that's on two pages back on the license agreement, in section 9.05. This is with regard to this agency issue. 9.05, as is typical of contracts, specifically states that the parties aren't partners or joint ventures, i.e., they're not agents of one another. Okay, thank you. Thank you. Rebuttal? Your Honor, in short, I believe we've reached the proper issue, which is what these letters are more than just a standard cease and desist. When they were created, they were done in conjunction with Metabolite. When they were decided where to send them, it was in conjunction with Metabolite and PAMLAB, the exclusive licensee, the licensee's materials. Well, when you say in conjunction with, is there some evidentiary proof in the record of this motion of communications back and forth between the patentee and the exclusive licensee? Dr. Allen says, testified in his depositions and part of the record, that, in fact, who to send these materials to, these letters, were, in fact, given to him vis-a-vis PAMLAB. In other words, the exclusive licensee said targeted who should get the letters. So to say that the exclusive licensee was not working with the patentee in this would be not really accurate because the patentee didn't know who to send them to. They were designated by the exclusive licensee. The exclusive licensee's materials were there for the purposes of the sales. And that's why the court in the lower court decided that, in fact, this is a solicitation. This is not a simple cease and desist. And, in fact, they are going for the business. And Mr. Allen said that was the purpose. If the district court had found that it was a solicitation, the holding would have been to the contrary. Well, I believe it would have used a different standard in terms of its analysis. And I think with not using it as a cease and desist letter, it would have resulted in an analysis that would have said, yes, we have jurisdiction. And therein is where the problem is because once the court had decided, well, if I also view this as a cease and desist and, therefore, give it an exemption, I'm not going to reach personal jurisdiction. I don't understand what you're saying. You're saying that the district judge decided what result he wanted and then ignored contrary law? No, Your Honor. What are you saying? Well, the judge said it's a solicitation. In its analysis, it treated the letter as a cease and desist. And therefore, it said we shouldn't give it much weight because it's an exemption. Well, what's your point? That the district judge was so internally inconsistent on the one hand, calling it a solicitation letter, but then later analyzing it as a cease and desist letter that we should reverse? Yes, Your Honor, because the analysis should have been just as a solicitation letter, not as a cease and desist. And that would have resulted in critical jurisdiction because it falls within the Florida's long-arm statute. It's an action that derives out of the very acts and solicitation that were made in the statute. Can you take that position, even though there's absolutely nothing in the letter which in any way specifically suggests or urges the recipient to purchase products from PEMLAB? Well, I think it does in the sense that it says it's the exclusive, that if you want to use it, you have to use them, that these are the only people. It's trying to say that these are the only people you can get a product from. So it's saying it by virtue of the understanding of what it's transporting in terms of information. But isn't it conditional? Because it starts out saying, consult your patent counsel. If you consulted your patent counsel and that lawyer concluded there's no infringement, then obviously the reference to PEMLAB would fall out of the letter. Yes, Your Honor, it does make that reference. And I don't believe the reference in the practical world of buyers where everyone is going to look and have a patent lawyer review the letter is a practical approach to understanding whether or not you're casting a net that's too far. And in fact, it's not true. What do you mean a net too far? You said that before. I don't understand what you're saying. Is that a letter to too many people? The scope of it is incorporating product that is non-infringing. Well, that's a matter of opinion. That's what the lawsuit would be about if there's a lawsuit. We can't accept as a premise that the product in question is non-infringing. It's not a product patent. Well, of course, that the product couldn't be used in the method that would infringe. It's only if it's used for that specific treatment and purpose. Any other use, such as vitamin deficiency. Well, Mr. Beaton agrees with that, apparently. And that's why he urged you to confer, your client to confer with a patent lawyer. So it seems to me that the reference to PEMLAB is a conditional reference depending on what the advice of the patent lawyer would be. That takes it a big step, I would think, away from being an offer to sell product or a solicitation for the drug chain to buy the product from PEMLAB. No, Your Honor. I think that the content is to actually buy the product from them and only from them. Even if there's no infringement? I believe that's what it was importing and saying to the buyer that you don't even want the possibility. So, therefore, you can only buy from us. Mr. Pershing, is Mr. Beaton correct that the promotional materials or the descriptive materials enclosed with those letters are not part of the record? I believe that is the case, Your Honor. To my knowledge, I believe it is not. Is that because they're not that important? If that letter is some form of solicitation or offer or something else to suggest that Metabolite came into the state of Florida to do business through its licensee in the state of Florida, don't you think the content of those enclosures is relevant? It's relevant in the sense of describing the product. Yes, Your Honor. I don't understand them as being actually like offers to purchase or something which has discrete information to create a purchase on the spot. I believe I'm out of time. Thank you both. We'll take the case under advisement.